UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Rexon Industrial Corporation, Ltd., <br><br> Plaintiff, <br> v. <br><br> Porter-Cable Corporation, <br> Delta International Machinery, Corp., <br> and Pentair, Inc., <br><br> Defendants. | Civil Action No.: 04-cv-30180 MAP |
| Black & Decker, Inc., <br> Black & Decker (U.S.), Inc., <br> Porter-Cable Corporation, and <br> Delta International Machinery, Corp. <br><br> Plaintiffs-in-Counterclaim, <br> v. <br><br> Rexon Industrial Corporation, Ltd., <br><br> Defendant-in-Counterclaim. | August 4, 2005 |

### REXON'S OPPOSITION TO BLACK & DECKER'S MOTION FOR ENTRY OF A PROTECTIVE ORDER AND REXON'S CROSS MOTION FOR ENTRY OF ITS PROPOSED PROTECTIVE ORDER

Plaintiff/Counterclaim Defendant Rexon Industrial Corporation, Ltd. ("Rexon") opposes Black & Decker's Motion For Entry Of A Protective Order (the "B & D Protective Order") for at least the reasons set forth below. As an alternative course of action, Rexon moves the Court to enter Rexon's Proposed Protective Order (the "Rexon Protective Order"). In contrast to the B&D Protective Order, the Rexon Protective Order provides sufficient protection against both inadvertent disclosure and unintended misuse of highly sensitive confidential information of a

disclosing party to its direct competitor. Rexon respectfully submits that the Court deny entry of the B & D Protective Order and enter the Rexon Protective Order. (A copy of the Rexon Protective Order is attached hereto as Exhibit A; the B & D Protective Order is attached as Ex. 2 to Black & Decker's Motion).

## BACKGROUND

All parties to this lawsuit, namely, Black & Decker, Inc., Black & Decker (U.S.), Inc., Porter-Cable Corporation, and Delta International Machinery Corp. (collectively "Black & Decker") and Rexon are engaged in the business of manufacturing, marketing, and selling power tools, including the miter saws which are the subject matter of this litigation. Porter-Cable Corporation and Delta International Machinery Corp. are now wholly owned by Black & Decker. Thus, Rexon and Black & Decker are direct competitors in the power tool business including the manufacture and sale of miter saws.

Both Rexon and Black & Decker, through Porter Cable Corp. and Delta Machinery Corp., are parties in another patent suit involving some of the same miter saws identified in this action. A protective order substantially identical to the Rexon Protective Order was vetted through all parties involved and entered by the court on March 4, 2005. (See Exhibit B, Protective Order for Civ. Action No. 04C-4337, District Court for the Northern District of Illinois – Eastern Division).

In the present litigation, both Rexon and Black & Decker are patent owners asserting claims of patent infringement against one another and defending against the infringement claims of the other. Both parties agree that, as in the Illinois case, a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure is necessary to protect the confidentiality of their respective trade secrets and confidential information. Indeed, most of the terms of the proposed protective orders now before the Court are agreeable to both Rexon and Black & Decker. The

remaining dispute involves whether or not Black & Decker's in-house counsel and other employees involved with both patent prosecution and competitive decision-making should have access to Rexon's confidential information and especially highly confidential information that, if used by or disclosed to a competitor, would place the disclosing party at a competitive disadvantage. Black & Decker is a very large corporation with a full complement of both general counsel and patent counsel in-house. Rexon is comparatively small, and has neither general counsel nor patent counsel in-house.

Rexon seeks only to retain the status quo in the marketplace by preventing access to its confidential research, design, and financial information by its direct competitor Black & Decker. Black & Decker, on the other hand, insists that in-house counsel involved in competitive decision-making including patent prosecution, litigation strategy and settlement negotiations involving the subject matter of this litigation, require access to all of Rexon's highly confidential trade secrets, technical research, product development, and business/financial information for the purpose of "conducting the litigation or facilitating settlement". (See Decl. of John DelPonti, ¶ 5 attached as Group Ex. 3 to Black & Decker's Motion) ("DelPonti Decl."). Additionally, the B & D Protective Order allows up to three employees of Black & Decker, who may be involved in competitive decision-making for similar products, access Rexon's confidential information.

The definitions of both Confidential and Highly Confidential Information - included in both of the Rexon Protective Order and the B & D Protective Order - are reproduced below:

> 2 a.   "CONFIDENTIAL" means testimony, information, documents, and data which constitute confidential, proprietary, business, personal, or technical information of the disclosing party which is not publicly available.
>
> 2 b.   "HIGHLY CONFIDENTIAL" means only information and documents that contain or refer to trade secrets or other confidential or technical research, development, business, or financial **information and that, if disclosed to a business competitor would tend to damage the disclosing party's competitive position.**

(Ex. A, Rexon Protective Order, ¶¶ 2a, 2b (emphasis added); B & D Protective Order ¶¶ 2a, 2b).

Highly Confidential Information, therefore, is information that, if misused by or disclosed to a competitor, would almost inevitably cause harm in a manner and at a time that is not readily ascertainable at present.

A. <u>Rexon's Proposed Protective Order</u>

The pertinent parts of the Rexon Protective Order are reproduced herein as follows:

7. Other than by the disclosing party, any information or document designated as "CONFIDENTIAL" shall be used solely in connection with the action and shall not be used in any other manner by a receiving Party. Any such designated information or documents shall not be disclosed to anyone other than:
    a. the Court and court personnel;
    b. court reporters taking testimony in these actions and their necessary stenographic, videographic, and clerical personnel;
    c. outside counsel for the parties and outside counsel's employees;
    d. **in-house counsel and no more than two employees** of a Party who require the information to assist the attorneys involved in this action or to evaluate this action for settlement discussions, and **who (i) do not participate in the Party's competitive decision-making process,** including, without limitation, in the areas of sales and marketing, product pricing, strategic planning, research and development, product development or manufacturing of products related to the subject matter of the patents-in-suit, **and (ii) are not and will not be substantively involved in patent prosecution activities,** including, without limitation, the selection of subject matter of any patent claims relating to the making or using power saws with optical alignment or dust collection systems for use with power tools, for the period of one (1) year after the conclusion of this litigation, including appeals **and (iii) have executed a Declaration in the form and scope of Exhibit A attached hereto;**

8. Other than by the disclosing party, any information or document designated as "HIGHLY CONFIDENTIAL" shall be used solely in connection with the action and shall not be used in any other manner by a receiving party. Any such designated information or documents shall not be disclosed to anyone other than:
    a. the Court and court personnel;
    b. court reporters taking testimony in these actions and their necessary stenographic, videographic, and clerical personnel;
    c. outside counsel for the parties and outside counsel's employees; ...

(See, Ex. A, Rexon Protective Order, ¶¶ 7, 8 (emphasis added)).

In accordance with Rule 26(c), the Rexon Protective Order seeks to ensure that Rexon's trade secrets and other confidential information are not revealed to its competitor, Black & Decker. (See Fed.R.Civ.P. 26(c)(7)). The Rexon Protective Order prevents Black & Decker's in-house counsel and employees from accessing Rexon's Highly Confidential Information. (See Ex. A, Rexon Protective Order, ¶ 8). With respect to Confidential Information, the Rexon Protective Order permits access to Black & Decker's in-house counsel and two employees of Black & Decker who (i) do not participate in Black & Decker's competitive decision-making process related to the subject matter of the patents-in-suit, and (ii) are not and will not be substantively involved in patent prosecution activities involving the subject matter of this litigation, and (iii) have executed the undertaking attached to the Rexon Protective Order. (See Ex. A, Rexon Protective Order, ¶ 7).

Accordingly, the Rexon Protective Order clearly permits the in-house counsel and employees of Black & Decker access to Rexon's Confidential Information under clearly defined circumstances. Thus, Black & Decker's assertion that Rexon seeks to exclude Black & Decker's in-house counsel "solely due to their status as 'in-house' counsel" is simply not accurate.

B.  Black & Decker's Proposed Protective Order

The corresponding parts of paragraphs 7 and 8 of the B & D Protective Order are reproduced herein as follows:

> 7.    Other than by the disclosing party, any information or document designated as "CONFIDENTIAL" shall be used solely in connection with the action and shall not be used in any other manner by a receiving Party. Any such designated information or documents shall not be disclosed to anyone other than:
>   a.  the Court and court personnel;
>   b.  court reporters taking testimony in these actions and their necessary stenographic, videographic, and clerical personnel;
>   c.  outside counsel for the parties and outside counsel's employees;
>   d.  **each Party's in-house counsel;**
>   e.  no more than three employees of a Party who require the information to assist the attorneys involved in this action or to evaluate this action for settlement

discussions, and **who (i) are not and will not be substantively involved in patent prosecution activities,** including, without limitation, the selection of subject matter of any patent claims relating to the making or using power saws with optical alignment or dust collection systems for use with power tools, for the period of one (1) year after the conclusion of this litigation, including appeals and (ii) have executed a Declaration in the form and scope of Exhibit A attached hereto;

8. Other than by the disclosing party, any information or document designated as "HIGHLY CONFIDENTIAL" shall be used solely in connection with the action and shall not be used in any other manner by a receiving party. Any such designated information or documents shall not be disclosed to anyone other than:
    a.    the Court and court personnel;
    b.    court reporters taking testimony in these actions and their necessary stenographic, videographic, and clerical personnel;
    c.    outside counsel for the parties and outside counsel's employees;
    d.    **each party's in-house counsel;**

(See B & D Protective Order, attached as Ex. 2 to Black & Decker's Motion (emphasis added)).

As set forth above, the B & D Protective Order provides unrestricted access for <u>all</u> of Black & Decker's in-house counsel, patent and general, to Rexon's Highly Confidential and Confidential documents and information <u>regardless of their position or duties</u>. Thus, in-house counsel involved with patent prosecution and competitive decision-making involving the subject matter of the litigation will have access to Rexon's Highly Confidential and Confidential Information. (See B & D Protective Order, ¶¶ 7, 8). Additionally, the B & D Protective Order allows up to three employees of Black & Decker to access Rexon's Confidential Information, including employees involved in competitive decision-making related to the subject matter of this litigation. (See B & D Protective Order, ¶ 7).

Although, Black & Decker asserts that Black & Decker's in-house counsel do not participate in competitive decision-making with respect to the products in suit, Black & Decker has removed from the B & D Protective Order the language proposed by Rexon to restrict access to Black & Decker's in-house counsel involved in competitive decision-making and patent

prosecution related to the products in suit. (See Black & Decker's Motion, p. 4, ll. 14-15; B & D Protective Order, ¶¶ 7, 8). Likewise, Black & Decker asserts that its in-house counsel are bound by the undertaking attached to the B & D Protective Order, yet has removed any such language from the B & D Protective Order requiring such in-house counsel to sign such undertaking. (See Black & Decker's Motion, p. 3, ll. 19-20).

Additionally, Black & Decker asserts that its in-house counsel involved in patent prosecution and enforcement of Black & Decker's patents, including patents related to miter saws (the subject matter of this litigation), "do not participate in competitive decision-making with respect to the products in suit." (See Black & Decker's Motion, p. 4, ll. 14-15; DelPonti Decl., ¶¶ 3-4; Decl. of Adan Ayala, ¶¶ 3-4) ("Ayala Decl."). This assertion is in direct conflict with established law, wherein patent prosecution has clearly been determined to be competitive decision-making. See Mikohn Gaming Corp. v. Acres Gaming, Inc. 50 U.S.P.Q.2d. 1783 (D. Nev. 1998); Motorola, Inc. v. Interdigital Tech Corp., 1994 WL 16189689 (D. Del. 1994).

## APPLICABLE LEGAL STANDARDS AND DISCUSSION

The Federal Rules of Civil Procedure provide qualified protection for trade secrets and confidential commercial information. See Fed. R. Civ. P. 26(c)(7). Accordingly, the court is afforded the discretion to enter a protective order "to avoid unnecessary disclosure . . . particularly where the action is between competitors." A. Hirsh, Inc. v. U.S., 657 F. Supp. 1297, 1300 (Ct. Int'l Trade 1987). In assessing the need for a protective order, the court must balance the need for disclosure of confidential information against the risk that the disclosure may be harmful to the disclosing party. See id. A party seeking disclosure of information that would otherwise be confidential bears the burden of establishing a sufficient need for the information

7

that outweighs the risk of injury. See Brown Bag Software v. Symantec Corp. 960 F.2d 1465, 1470 (9th Cir. 1992).

The risk of irreparable competitive harm is greatly increased when confidential information of one party is disclosed to its competitors. Hirsh, 657 F. Supp. at 1300 ("[W]here the court grants access to [confidential information] for litigation purposes, 'the risk of the competitor's obtaining an unfair business advantage may be substantially increased.'"). A protective order is proper in cases involving in-house counsel involved in a company's competitive decision-making because "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so and, as a result, attendant conflicts can arise." Id. at 1304. In Hirsh, it was undisputed that the business information under the protective order was confidential and that disclosure would cause irreparable competitive harm to the Defendant.[1] Id. at 1305. Similarly, in Brown Bag, a party's contention that in-house counsel needed access to confidential information to manage the case was held to be insufficient to overcome the risk of inadvertent disclosure. See Brown Bag, 960 F.2d at 1471. Likewise, in Intel Corp., v. VIA Technologies, Inc., 198 F.R.D. 252 (N.D. Cal. 2000), the court held the inadvertent disclosure of trade secrets would be great because "the information could be used to duplicate VIA [competitor's] products, compete for its customers, or interfere with its business plan and thereby gain a competitive advantage in the marketplace." Intel, 198 F.R.D. at 531. Similar to Hirsh, Brown Bag, and Intel, Black & Decker seeks production of Rexon's confidential information

---

[1] The confidential information comprised the nonpublic portion of the administrative record submitted to or produced by the International Trade Administration, U.S. Department of Commerce ("ITA") and the International Trade Commission ("ITC") in connection with their investigations of natural-bristle paintbrushes from the People's Republic of China. Hirsh, 657 F. Supp. at 1298-99.

that, if disclosed to Black & Decker, either advertently or inadvertently, would cause irreparable competitive harm to Rexon.

A. <u>A Risk of Inadvertent Disclosure Exists Where Counsel Is Involved in Competitive Decision-Making</u>

Black & Decker seeks to give in-house counsel access to all of Rexon's confidential and sensitive materials throughout the course of this Action. Rexon seeks to exclude in-house counsel from reviewing sensitive information, especially where such in-house counsel are involved in competitive decision-making for Black & Decker, including patent prosecution and product licensing. See <u>U.S. Steel Corp. v. United States</u>, 730 F.2d 1465, 1468 (Fed. Cir. 1984). In <u>U.S. Steel</u>, the term "competitive decision making" was defined as "shorthand for a counsel's activities, association, and relationship with a client that are such to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." <u>Id.</u> In-house counsel who prosecute patents, counsel engineers regarding product designs, or who have any involvement in licensing decisions made by a company have great influence over the client's decisions. See, e.g., <u>Interactive Coupon Mktg. Group, Inc. v. H.O.T.! Coupons, LLC</u>, 1999 WL 618969, at *3 (N.D. Ill.) (quoting <u>U.S. Steel</u>, 730 F.2d at 1468, n.3) ("[C]ompetitive decision-making is not limited to decision-making about pricing and design but can extend to the manner in which patent applications are shaped and prosecuted."); <u>Intel</u>, 198 F.R.D. at 530 ("[L]icensing through litigation constitutes competitive decision-making because [a] counsel's advice and counsel necessarily affect licensing decisions."). The danger in allowing competitive decision-makers access to confidential information stems from the fact that those attorneys, even when exercising good faith and diligence, may inadvertently disclose confidential information to their clients. <u>U.S. Steel</u>, 730 F.2d at 1468.

Here, a risk of inadvertent disclosure clearly exists because Black & Decker cannot prevent in-house counsel having access to Rexon's confidential information from utilizing that information in Black & Decker's business decisions to the detriment of Rexon. There is no dispute that Rexon and Black & Decker are direct competitors with respect to miter saws, the subject matter of this litigation. Further, there is no dispute that Black & Decker seeks Highly Confidential Information from Rexon. (See Black & Decker's Motion, p. 1, ¶ 1 ("The parties agree that a protective order pursuant to Fed.R.Civ.P. 26(c) is necessary in this case to protect their sensitive business information.")). For example, Black & Decker's production requests seek "[a]ll documents and things relating to any and/or all advertising, business plans, marketing plans or efforts, promotional programs or strategies on the part of Rexon, or on its behalf, concerning any proposed or actual products shown, described, or claimed in the '203 patent [Rexon's involved patent]." Also, Black & Decker requests "[a]ll patents and applications, whether pending or abandoned, United States or foreign, issued to, assigned to or filed by or on behalf of Rexon that relate to or claim priority to the '203 patent..." (Black & Decker's First Set of Req. for Production, attached hereto as Exhibit C, Request Nos. 7 and 11).

The potential for irreparable injury to Rexon from disclosure and misuse of Rexon's confidential information by Black & Decker is great because the information obtained by Black & Decker could be used to duplicate Rexon's products, compete for its customers, or interfere with its business plans whereby Black & Decker would gain a competitive advantage over Rexon. Therefore, it cannot be disputed that if Rexon's Confidential and Highly Confidential information is disclosed to Black & Decker it will result in irreparable injury to Rexon.

B. <u>Black & Decker's Proposed In-House Counsel Involved in Competitive Decision-Making Should Be Denied Access to Rexon's Confidential Information</u>

The B & D Protective Order permits <u>all</u> of its in-house counsel unrestricted access to Rexon's Confidential and Highly Confidential Information. In its Motion, Black & Decker states that it has offered to restrict access to Rexon's confidential information to three in-house attorneys, namely, John DelPonti ("DelPonti"), Adan Ayala ("Ayala") and one other.[2] Black & Decker asserts that its proposed in-house counsel, DelPonti and Ayala are <u>not</u> involved in "competitive decision-making" with respect to the subject matter of the litigation. (See Black & Decker's Motion, p. 4, ll. 14-15). However, these attorneys admit to being involved in patent prosecution, litigation strategy and settlement negotiations directly related to the subject matter of this litigation. (See DelPonti Decl., ¶¶ 3, 5; Ayala Decl., ¶¶ 3, 5).

Involvement in patent prosecution, litigation strategy and licensing negotiations in the context of litigation necessarily involves competitive decision-making on behalf of a company. In <u>Mikohn</u>, for example, the court held that "[p]atent prosecution constitutes involvement in competitive decision-making." <u>Mikohn</u>, 50 U.S.P.Q.2d. 1783. Similar reasoning was used by the court in <u>Motorola</u>. There, the court concluded that attorneys "who were to view ... [a competitor's] confidential information and then prosecute patents would have to constantly challenge the origin of every idea, every spark of genius. This would by a sisyphean task, for as soon as one idea would be stamped 'untainted', another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the ... attorneys may be." <u>Motorola</u>, 1994 WL 16189689, at *14-15. In

---

[2] John DelPonti has declared that his position is "General Patent Counsel" for Black & Decker. (DelPonti Decl., ¶¶ 1, 5). However, he has also been identified as "general counsel for Black & Decker". (See Exhibit D, USPTO Media Advisory). Typically, General Counsel to a corporation is very much engrossed in competitive decision-making for the corporation. A person with those responsibilities should not be permitted access to Rexon's confidential information.

11

Interactive Coupon, the court held that competitive decision-making is not limited to decision-making about pricing and design and can extend to the manner in which patent applications are shaped and prosecuted. Interactive Coupon, 1999 WL 618969, at *3; see also In Re Papst Licensing, GmbH, 2000 U.S. Dist. Lexis 6374, at *12 ("[A]dvice and participation of the ... parties' counsel in preparation and prosecution of patent applications related to the patents in suit is an intensely competitive decision-making activity and would be informed by access to the [opposing] party's confidential information.").

Black & Decker's in-house attorneys DelPonti and Ayala have acknowledged that they are involved with patent prosecution and enforcement of patents related to the subject matter of the litigation. Clearly, therefore, they *are* involved in competitive decision-making related to the pertinent subject matter. It cannot be disputed that disclosure of Rexon's trade secrets to Black & Decker's in-house counsel involved with the prosecution and enforcement of patents directed to the same subject matter as the patents-in-suit would require Black & Decker's in-house patent counsel to perform the impossible task of compartmentalizing Rexon's confidential information so it does not inform their decisions pertaining to future patent prosecutions. Thus, just as in the decisions in Interactive Coupon, In Re Papst, Motorola and Mikohn, Black & Decker's in-house counsel involved with competitive decision-making, including patent prosecution, should not be permitted access to Rexon's Highly Confidential and Confidential information.

Black & Decker suggests that the ethical obligations of Black & Decker's in-house counsel preclude improper disclosure of Rexon's confidential information. Rexon does not suggest otherwise. However, Black & Decker has failed to address the high risk of inadvertent disclosure or misuse of Rexon's confidential information by Black & Decker's in-house attorneys involved with patent prosecution and competitive decision-making. The B & D

Protective Order provides **no** protection from inadvertent disclosure or misuse of Rexon's Highly Confidential and Confidential information disclosed to Black & Decker.

Both, DelPonti and Ayala are "substantively involved in litigation strategy and settlement negotiations which pertain to the enforcement of Black & Decker's intellectual property". (See DelPonti Decl., ¶ 5; Ayala Decl., ¶ 5). Presumably, these settlement negotiations include the licensing of Black & Decker's patents. In Intel, the court determined that "licensing through litigation constitutes competitive decision-making because [a] counsel's advice and counsel necessarily affect licensing decisions." Intel, 198 F.R.D. at 530. Just as in Intel, licensing agreements, technical information, and marketing materials of Rexon will be produced in discovery pursuant to a protective order. If Rexon's licensing agreements, technical, and marketing information are disclosed to Black & Decker's in-house attorneys, this information will be directly relevant to Black & Decker's in-house counsels' evaluation of licensing agreements of Black & Decker's related products. Therefore, confidential information of Rexon may provide Black & Decker a competitive advantage in negotiating licensing agreements in the future. Even though Black & Decker's in-house attorneys may not purposely or knowingly evaluate an agreement in light of Rexon's confidential information, the difficulty in "locking up trade secrets in [one's] mind" makes protection against inadvertent disclosure necessary. Id. (quoting Brown Bag, 960 F.2d at 1471).

Black & Decker's in-house counsel are susceptible to inadvertent disclosure or misuse of Rexon's confidential information if provided with the same. Accordingly, these counsel and others with similar responsibilities should not be permitted access to Rexon's confidential information.

13

C.  <u>Black & Decker's Has Not Established that Its Ability to Litigate Will Be Prejudiced under a Protective Order Preventing Black & Decker's In-House Counsel to Access Rexon's Confidential Information</u>

"The party seeking access [to confidential commercial information] must demonstrate that its ability to litigate will be prejudiced, not merely its ability to manage outside counsel." <u>Intel</u>, 198 F.R.D. at 531 (citing <u>Hirsh</u>, 657 F.Supp. at 1300); see also <u>Brown Bag</u>, 960 F.2d 1465 (same). In-house counsel have been granted access to confidential materials where a party can show that it cannot litigate a matter solely through outside counsel. In <u>Intel</u>, where in-house counsel had no specialized knowledge and Intel had engaged outside counsel of appropriate quality, the court held there was no prejudice in restricting in-house counsel's access to confidential information. <u>Intel</u>, 198 F.R.D. at 531. In <u>Hirsh</u>, the court held that plaintiffs' need to prepare its case was satisfied by disclosure to its outside counsel because outside counsel was competent and because it was presumably familiar with the proceeding prior to the commencement of the action. <u>Hirsh</u>, 657 F.Supp. at 1305.

Here, Black & Decker has not and cannot allege that its ability to litigate through outside counsel will be impaired. There is no distinguishable specialized knowledge that Black & Decker's in-house counsel can provide to its outside counsel. Trial counsel is nationally recognized in the field and has an extensive history in protecting the intellectual property of Black & Decker, including cases[3] involving the same and/or similar patents in suit here pursuant to protective orders substantially similar to the Rexon Protective Order.[4] Finally, recall that the Rexon Protective Order was negotiated over many months where the issue of access to highly confidential information by Black & Decker counsel was fully considered in the copending

---

[3] *See* Civil Action No. 1:03-CV-2699 WDQ in the U.S. District Court of Maryland, Northern Division.

[4] The cases identified by Black & Decker wherein the protective orders provided its in-house counsel access to confidential information of the opposing parties are not relevant to this case as one of the cases is a trademark case

14

Illinois suit. The Rexon Protective Order was deemed adequate and its entry was by stipulation. (See Civil Action No. 1:04-CV-4337 in the U.S. District Court for the Northern District of Illinois - Eastern Division).

D.  **Black & Decker Has Not Established that Its Employees Involved in Competitive Decision-Making Involving Products Related to the Subject Matter of the Litigation Need Access to Rexon's Confidential Information.**

With respect to Black & Decker's employees' access to Rexon's Confidential Information, Black & Decker agrees the "party employees who are 'substantively involved in patent prosecution matters' related to the technology at issue should be precluded from all non-public information which may contain confidential or highly confidential information." (See Black & Decker's Motion, p. 6, ll. 15-18). Presumably, this is due to the high risk of inadvertent disclosure or misuse of confidential information during patent prosecution matters. However, Black & Decker has removed the limitation proposed by Rexon preventing access to confidential information by employees involved in competitive decision-making related to the subject matter of the litigation. For employees, Black & Decker proposes allowing employees involved in competitive decision-making access to confidential documents, while preventing access to those employees involved with patent prosecution. Whereas, for its in-house counsel, Black & Decker argues to allow access to in-house counsel involved with patent prosecution but prevent access to in-house counsel involved in non-patent related competitive decision-making. Accordingly, pursuant to the B & D Protective Order, <u>all</u> of Rexon's confidential information will be disclosed to persons at Black & Decker directly involved with both patent prosecution and competitive decision-making in some manner (i.e., employees involved in competitive decision-making but not involved in patent prosecution are permitted access to Rexon's Confidential Information, and

---

wherein there is little relevant trade secret information and the other involves an individual whom is not a competitor of Black & Decker.

15

in-house counsel involved in competitive decision-making including patent prosecution are permitted access to Confidential and Highly Confidential information). Accordingly, Black & Decker's proposed Protective Order effectively defeats the purpose of a protective order. In fact, Black & Decker's proposed Protective Order provides nothing to prevent improper disclosure of Rexon's confidential information to Black & Decker. Accordingly, for at least the above identified reasons the B & D- Protective Order should be denied.

### REXON'S CROSS MOTION FOR ENTRY OF THE REXON-PROTECTIVE ORDER

As set forth above, the Rexon Protective Order provides both Rexon and Black & Decker reasonable protection from the risk of improper and/or inadvertent disclosure and misuse of Highly Confidential information by denying all employees and in-house counsel of an opposing party access to the other party's Highly Confidential Information. Further, the Rexon Protective Order restricts access to an opposing party's Confidential Information by providing access to Confidential Information to only in-house counsel and employees of a party who are not involved with patent prosecution or competitive decision-making involving the subject matter of the litigation. Thus, the Rexon Protective Order does not prejudice any party's ability to litigate its case yet provides reasonable protection against improper disclosure and the misuse of each party's confidential information in accordance with Rule 26(c) and established case law.

Accordingly, for at least the reasons set forth above, Rexon respectfully requests the Court to deny Black & Decker's motion for entry of its Protective Order and, instead enter the Rexon Protective Order.

## ORAL HEARING

Rexon hereby requests an oral hearing before the Court.

Respectfully submitted by,

Plaintiff/Counterclaim Defendant,
Rexon Industrial Corporation, Ltd.

By: _____
Donald J. MacDonald
J. Kevin Grogan
Wm. Tucker Griffith
McCormick, Paulding & Huber LLP
1350 Main Street, 5th Floor
Springfield, MA 01103
Tel. (413) 736-5401

Jeffrey E. Schiller
Jeffrey E. Rosenberg
Schuyler, Roche & Zwirner
One Prudential Plaza, Suite 3800
130 East Randolph Street
Chicago, IL 60601
Tel. (312) 565-2400

Its Attorneys

## Certificate of Service

I hereby certify that a copy of Rexon's Opposition To Black & Decker's Motion For Entry Of A Protective Order And Rexon's Cross Motion For Entry Of Its Protective Order was mailed via prepaid overnight delivery, this 4th day of August 2005, to counsel of record as follows:

Dina M. Hayes
    Email: hayes@nshn.com
NIRO, SCAVONE, HALLER & NIRO
181 West Madison, Suite 4600
Chicago, Illinois 60602-4515
Phone: (312) 236-0733
Facsimile: (312) 236-3137


C. Jeffrey Kinder (BBO# 563890)
    Email: kinder@fierstpucci.com
FIERST, PUCCI & KINDER LLP 64 Gothic Street, Suite 4
Northampton, Massachusetts 01060
Phone: (413) 584-8067
Facsimile: (413) 585-0787

**Attorneys for Black & Decker Inc.,
Black & Decker (U.S.) Inc., Porter-Cable
Corporation and
Delta International Machinery Corporation**

_____
Donald J. MacDonald