

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FILED

MAY 23 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| ONE WORLD TECHNOLOGIES, LTD. and RYOBI TECHNOLOGIES, INC., Plaintiffs, v. REXON INDUSTRIAL CORP., LTD., POWER TOOL SPECIALISTS, INC., PORTER-CABLE CORP., DELTA INTERNATIONAL MACHINERY CORP., and PENTAIR, INC., Defendants. | Civil Action No. 04C 4337<br>Judge Matthew F. Kennelly |
|---|---|

**ONE WORLD'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR LEAVE TO FILE ITS FOURTH AMENDED COMPLAINT
ADDING REXON USA AS A DEFENDANT**

## I. INTRODUCTION

One World Technologies, Ltd. and Ryobi Technologies, Inc. (collectively, "One World") recently learned that Rexon USA, Corp. ("Rexon USA"), a Massachusetts corporation related to Defendants Rexon Industrial Corp., Ltd. ("Rexon") and Power Tool Specialists, Inc. ("PTS"), is infringing the patents-in-suit. Accordingly, One World seeks to add Rexon USA as a defendant in this case. One World's proposed Fourth Amended Complaint adding Rexon USA accompanies this motion.

The proposed addition of Rexon USA to the case raises few, if any, new issues that need to be discovered. For example, adding Rexon USA does not have any effect on the number of patent claims being asserted, the models of the products being charged with infringement, or the witnesses involved. In an attempt to procure a complete and enforceable judgment, One World merely seeks to add the alter ego of Rexon and PTS to this case.

## II. CONTROLLING LAW

Federal Rule of Civil Procedure 15(a) permits a complaint to be amended after a responsive pleading is served "only by leave of court or by written consent of the adverse party." Such "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "The purpose of this liberal standard is to allow plaintiffs to present, and have the court decide, a case on its merits." *Orlowski v. Dominick's Finer Foods, Inc.*, 937 F. Supp. 723, 732 (N.D. Ill. 1996) (Keys, J.). However, a district court need not allow an amendment when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

In addition to satisfying Rule 15(a), an amendment seeking to add an additional defendant must comport with Rule 20, which governs the permissive joinder of parties. *See Westell Techs., Inc. v. Hyperedge Corp.*, No. 02 C 3496, 2003 U.S. Dist. LEXIS 15688, at *3 (N.D. Ill. Sept. 3, 2003) (Gottschall, J.) (Ex. A). Such an amendment must meet two prerequisites as to the defendants, including the proposed new defendant: (1) they must be charged with claims that arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) they must share in common at least one question of law or fact. Fed. R. Civ. P. 20(a).

## III. REXON USA SHOULD BE ADDED AS A DEFENDANT IN THIS CASE

### A. The Recently Discovered Facts

In this case, the accused products include miter saws and table saws. Both Rexon and PTS have been stonewalling One World, both with respect to documents and discovery. As a result, One World has so far been able to get very little from Rexon and nothing from PTS in the way of documents, and neither Rexon nor PTS have been forthcoming with corporate deponents. Consequently, One World has been forced to file motion to compel discovery from Rexon and PTS. *See* One World's Motion to Compel Defendants Rexon and PTS to Complete Their Document Production, To Produce Their Rule 30(b)(6) Witnesses, and to Produce Rexon Witnesses in Chicago, filed May 23, 2005.

Nonetheless, there is another lawsuit pending in this Court between One World, Rexon and PTS. *One World Technologies, Ltd. et al. v. Robert Bosch Tool Corp. et al*, Civil Action No. 04 C 0833 (Zagel, J.). In that lawsuit, which is presently before Judge Zagel, One World has

charged Rexon and PTS with infringing another of One World's patents directed to a rotatable saw handle. The accused products in Judge Zagel's case are also miter saws, including some of those accused of infringement in this case.

On March 28, 2005, Rexon disclosed in Judge Zagel's case that some accused miter saws are directly shipped from Rexon to Rexon USA for the replenishment of Sears' inventory (Ex. B, Rexon Response to Interrogatory No. 16). On April 4-5, 2005, in the only depositions taken in that case to date, Rexon's research and development managers stated that:

- Rexon owns both Rexon USA and PTS (*see* Ex. C, Ku Dep. 57-58, 64; Ex. D, Lo Dep. at 18);
- Rexon USA and PTS share the same physical offices (*see* Ex. C, Ku Dep. at 64; Ex. D, Lo Dep. at 39-40);
- Rexon USA provides the sales force for Rexon's miter saws and table saws (*see* Ex. C, Ku Dep. at 53, 58-70)
- Rexon USA and PTS both provide after-sales service to customers for miter saws and table saws (*see* Ex. C, Ku Dep. at 14-17, 94; Ex. D, Lo Dep. at 18-20); and
- It is difficult to differentiate between Rexon USA and PTS (*see* Ex. C, Ku Dep. at 58, 62, 64).

An inspection of the corporate filings of Rexon USA and PTS confirms that the two companies have the same president, officers, directors, registered agent and location (Exs. E, F Rexon USA/PTS filings; Exs. G, H, D&B Reports). One World is also moving to add Rexon USA to Judge Zagel's case.

**B. The Addition of Rexon USA As a Defendant Would Not Be Futile**

A proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss. *See Peoples v. Sebring Capital Corp.*, 209 F.R.D. 428, 430 (N.D. Ill. 2002) (Gottschall, J.). Here, Rexon USA is clearly involved in the importation and sale of the accused products, as well as instructing end-users on how to use them, and thus may be infringing the patents-in-suit. *See* 35 U.S.C. § 271; *see also Mahurkar v. C.R. Bard, Inc. et al.*, No. 01 C 8452, 2003 U.S. Dist. LEXIS 2329, at *15 (N.D. Ill. Feb. 18, 2003) (Pallmeyer, J.) ("where the infringement is the result of the participation and combined actions of the defendants, they are joint infringers and are jointly liable for the infringement") (Ex. I). Moreover, Rexon USA may be liable for PTS' or Rexon's infringing activities under alter ego or agency theories of liability. *See SRI Int'l, Inc. v. Internet Sec. Sys., Inc. et al*, No. 04-1199-SLR, 2005 U.S. Dist. LEXIS 6797, at *8-*10 (D. Del. Apr. 13, 2005) (Ex. J); *Westell*, 2003 U.S. Dist. LEXIS 15688, at *4-*6 (adding new defendant

not frivolous where alter ego and agency theories of liability are justified by common shareholders and officers, including common president). Accordingly, adding Rexon USA as a defendant to this case would not be futile.

**C. The Addition of Rexon USA Would Not Result in Any Undue Prejudice**

One World brings this motion several weeks after learning the above-identified facts concerning Rexon USA based on discovery in Judge Zagel's case. Recently discovered information is a sufficient justification for adding a new defendant to a case. *See Westell*, 2003 U.S. Dist. LEXIS 15688, at *5-*9; *Gregg Comm. Sys., Inc. v. Am. Tel. & Tel. Co.*, 98 F.R.D. 715, 721 (N.D. Ill. 1983) (Bua, J.) ("the need to amend may not appear until some discovery is completed"). Regardless, mere delay is an insufficient basis for denying leave to amend unless the delay results in undue prejudice to the opposing party. *Tragarz v. Keene Corp.*, 980 F.2d 411, 432 (7th Cir. 1983).

Because fact discovery in this case is on-going, there is no undue prejudice due to reopening or duplicating discovery. *See Westell*, 2003 U.S. Dist. LEXIS 15688, at *5. The parties can complete fact discovery by June 30, 2005 because there are few, if any, new issues that need to be discovered. For example, adding Rexon USA does not have any effect on the number of patent claims being asserted, the models of the products being charged with infringement, or the witnesses involved.

Even if some additional discovery and briefing are necessary, it would not be so prejudicial that the proposed amendment should be denied. *See Sitrick v. Freehand Sys., Inc.*, No. 02 C 1568, 2004 U.S. Dist. LEXIS 5292, at *19 (N.D. Ill. March 31, 2004) (Guzman, J.) (Ex. K). Further, Rexon USA can retain the same outside counsel as Rexon and PTS, whom are being jointly represented by the same firms in both this case and in Judge Zagel's case. A court should prohibit an amended complaint only where the prejudice to the opposing party outweighs the moving party's right to have the case decided on the merits. *See Orlowski*, 937 F. Supp. at 732. Any prejudice that would result by adding Rexon USA does not outweigh One World's rights to prosecute its infringement case against all applicable defendants and to obtain a complete and enforceable judgment.

**D. There is No Undue Delay, Bad Faith or Dilatory Motive**

Rexon, PTS and Rexon USA cannot point to any undue delay, bad faith or dilatory motive on the part of One World in bringing this motion. Rexon and PTS continue to stonewall

One World with respect to discovery. Indeed, One World only recently learned of the facts supporting this motion based on discovery taken in Judge Zagel's case.

Nor can Rexon, PTS and Rexon USA claim any surprise, as the facts that form the basis of the instant motion were known to them before they were learned by One World. *See Sitrick*, 2004 U.S. Dist. LEXIS 5292, at *10-*11. In addition, One World provided prior notice to counsel for the parties that this motion would be filed (*see* Ex. L, 5/3/05 Letter from Gauri to Grogan; Ex. M, 5/19/05 Letter from Zanfardino to Griffith and Hartmann).

**E. One World's Claims Against Rexon, PTS and Rexon USA Arise Out of the Same Transactions and Share Common Questions of Law and Fact**

Both criteria under Rule 20(a) are met here. First, One World contends that Rexon USA is infringing the patents-in-suit by its importation of the accused products from Rexon and its replenishment of Sears' inventory. One World also contends that Rexon USA is involved in the same post-sale infringing activities as PTS due to their overlap in officers and personnel. The claims against Rexon, PTS and Rexon USA thus arise out of the same transactions or series of transactions. *See Westell*, 2003 U.S. Dist. LEXIS 15688 at *6.

Second, because One World's claims in this case are all based upon infringement of the same patents-in-suit, common questions of law and fact exist between the parties. *See id; see also Stanley Works v. Haeger Potteries, Inc.*, 35 F.R.D. 551, 554 (N.D. Ill. 1964) (Marovitz, J.) (in patent case where the proposed new defendant allegedly made infringement possible, judicial economy requires the proposed new defendant's presence in the case).

## IV. CONCLUSION

The proposed addition of Rexon USA as a defendant in this case satisfies the requirements of Fed.R.Civ.P. 15 and 20. Accordingly, for the reasons stated above, One World respectfully requests that the Court grant it leave to file its proposed Fourth Amended Complaint for Patent Infringement, and accept for filing instanter the signed Fourth Amended Complaint attached at Exhibit N.

Dated: May 23, 2005

Respectfully submitted,

[signature]

Gary M. Ropski
Dominic P. Zanfardino
Robert S. Mallin
Anastasia Heffner
Mircea A. Tipescu
BRINKS HOFER GILSON & LIONE
NBC Tower – Suite 3600
455 N. Cityfront Plaza Drive
Chicago, IL 60611-5599

Attorneys for Plaintiffs
ONE WORLD TECHNOLOGIES, LTD. and
RYOBI TECHNOLOGIES, INC.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing **ONE WORLD'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE ITS FOURTH AMENDED COMPLAINT ADDING REXON USA AS A DEFENDANT** was served on this 23th day of May, 2005, on the following attorneys:

**VIA HAND DELIVERY**
Jeffrey E. Schiller, Esq.
Jeffrey R. Rosenberg, Esq.
SCHUYLER, ROCHE & ZWIRNER
One Prudential Plaza, Suite 3800
130 East Randolph Street
Chicago, IL 60601

**VIA HAND DELIVERY**
Monica L. Thompson, Esq.
Albert E. Hartmann, Esq.
PIPER RUDNICK LLP
203 N. LaSalle Street
Suite 1800
Chicago, IL 60601

**VIA OVERNIGHT MAIL**
J. Kevin Grogan, Esq.
Wm. Tucker Griffith, Esq.
MCCORMICK, PAULDING & HUBER, LLP
1350 Main Street, 5th Floor
Springfield, MA 01103

[signature]

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

- - - - - - - - - - - - - - - - - - X
ONE WORLD TECHNOLOGIES, LTD, AND :
RYOBI TECHNOLOGIES, INC., :
PLAINTIFFS :
:
VS :
:
ROBERT BOSCH TOOL CORPORATION, :
REXON INDUSTRIAL CORP., LTD., AND :
POWER TOOL SPECIALISTS, INC., :
DEFENDANTS :
- - - - - - - - - - - - - - - - - - X

Videotaped deposition of GEORGE KU taken at the offices of McCormick, Paulding & Huber, LLP, CityPlace II, 185 Asylum Street, Hartford, Connecticut 06103, before Clifford Edwards, LSR, Connecticut License No. SHR.407, a Professional Shorthand Reporter and Notary Public, in and for the State of Connecticut on April 4, 2005, at 9:00 a.m.

DEL VECCHIO REPORTING SERVICES, LLC
PROFESSIONAL SHORTHAND REPORTERS
117 RANDI DRIVE

MADISON, CT 06443

HARTFORD NEW HAVEN STAMFORD

09:29:44 Q What documents did you provide?

09:29:53 A A lot. Like meeting notes. Simple logs.

09:30:10 Q I'm sorry, simple locks?

09:30:15 THE INTERPRETER: L-o-g, Log.

09:30:17 A Daily journal.

09:30:18 BY MR. GAURI:

09:30:19 Q Anything other than meeting notes and
09:30:22 daily journals?

09:30:28 A Some simple drawings.

09:30:34 Q Anything else?

09:30:36 A That's all I can remember.

09:30:38 Q Did this request come directly from
09:30:40 attorneys or from someone at PTS?

09:30:49 A PTS.

09:30:51 Q And who was it at PTS that requested these
09:30:54 from you?

09:30:59 A Judy.

09:31:00 Q Anyone else?

09:31:01 A No.

09:31:05 Q What topics do you speak with Jenny at PTS
09:31:10 about?

09:31:17 A Is it related to this one?

09:31:26 Is it -- do you mean something related to
09:31:30 this case?

09:31:32 Q No. Earlier you stated that you speak to

09:31:35 Jenny at PTS in English about certain topics, so I just wanted to know what those topics were that you speak to her about.

09:31:56 A We communicate by e-mail. She just asked me for some material.

09:32:07 Q Did she ask for the materials for this litigation or was this prior to the litigation?

09:32:24 A I don't remember.

09:32:27 Q Did you provide any e-mails to Jenny or Judy?

09:32:36 THE INTERPRETER: Sorry.

09:32:38 Provide what?

09:32:38 BY MR. GAURI:

09:32:39 Q Did you provide e-mails to Jenny or Judy?

09:32:47 A We are colleagues. We always communicate with e-mails.

09:32:51 I don't quite understand your question.

09:32:53 Q Earlier you stated you provide drawings, meeting notes and daily logs to Judy for the litigation.

09:33:01 Did you provide any e-mails?

09:33:04 THE INTERPRETER: Provide those things in e-mail?

09:33:06 BY MR. GAURI:

09:33:07 Q In addition to those things, did you also

09:33:15 search for and provide any e-mail messages?

09:33:26 A Yes, but a lot of things I really don't

09:33:30 remember.

09:33:31 Q But you do remember providing e-mails?

09:33:42 A I just respond that to her that when I can

09:33:46 provide information or material.

09:33:55 Q Do you speak to Jenny about any topics

09:33:58 other than providing documents or e-mails?

09:34:22 A The topic I talk to -- I communicate with

09:34:27 Jenny is different.

09:34:28 Q What are those topics?

09:34:33 A After sales service.

09:34:40 Q Does she ask you questions about after

09:34:43 sales service?

09:34:48 A Yes.

09:34:49 Q For which products?

09:34:55 A Too many.

09:34:58 Q Miter saws?

09:35:06 A All products. Miter saw, geo saw

09:35:11 (phonetic), table saw.

09:35:14 Q And the documents you provided to Judy,

09:35:17 which products were those related to?

09:35:24 A Too many. I don't remember.

09:35:26 Q Miter saws?

09:35:29 A That's one of them.

09:35:31 Q Table saws?
09:35:33 A Yes.
09:35:36 Q Do you speak with Jenny about any topics other than after sales service?
09:35:46 A No.
09:35:48 Q You mentioned earlier that you speak in English to Nina Lancaster.
09:35:55 What topics do you discuss with her in English?
09:36:12 A She is responsible to give -- to provide us with after sales record.
09:36:21 Q Does she do anything -- does she discuss anything else with you?
09:36:26 A No.
09:36:27 Q Do you know her title or position at PTS?
09:36:35 A No, I don't.
09:36:36 Q Do you know Jenny's title or duties at PTS?
09:36:49 A Office manager if I remember.
09:37:00 I don't know about Judy.
09:37:03 Q What do you speak to Joe Borgatti about in English?
09:37:11 A After problems about -- issues about after sale.
09:37:15 Q Anything else?

11:08:02 A Because there are many I don't remember.

11:08:06 Q Who at Sears told you to stop manufacturing these miter saws?

11:08:27 A Usually the salespeople -- our salespeople told me, but I don't remember.

11:08:34 Q Which salespeople told you this?

11:08:43 A Jim Lancaster.

11:08:52 Q Anyone else?

11:08:54 A I don't remember.

11:09:00 Q So the M 2503 RC is the miter saw with the rotating handle you are currently making?

11:09:18 A Yes.

11:09:22 Q And do you know the Craftsman model numbers that correspond to that miter saw?

11:09:33 A I don't remember.

11:09:39 Q Did you stop making the 24276 at the same time that you stopped making the 21200?

11:09:57 A It should not be at the same time, but I don't remember.

11:10:23 Q So you mentioned Ruby Hsiao, she's the one that wrote the instructions with the Craftsman miter saws with the rotating handles?

11:10:43 A Yes.

11:10:44 Q Did she write them in English?

11:10:46 A Yes.

11:16:19 A Daniel.

11:16:22 Q Anyone else?

11:16:26 A No.

11:16:29 THE WITNESS: Sorry. Sometime mix.

11:16:33 BY MR. GAURI:

11:16:33 Q On the chart -- Mr. Ku, on the chart
11:16:36 next -- you have in front of you, Plaintiff's
11:16:39 Exhibit 1, there's a category, it says overseas
11:16:43 subsidiary?

11:16:47 THE WITNESS: Yes.

11:16:47 BY MR. GAURI:

11:16:48 Q Do you know who that person is?
11:16:51 I'm sorry.
11:16:51 Do you know who that subsidiary is?

11:17:10 A I'm not sure what you mean here, but I
11:17:13 know that we have branches in France, England,
11:17:17 Germany and Japan.

11:17:19 Q Do you have branches in the United States?

11:17:23 A Yes.

11:17:25 Q Which ones?

11:17:30 A Rexon USA.

11:17:33 Q Anyone else?

11:17:40 A I'm not so sure about others.

11:17:44 Q Would you consider PTS to be an overseas
11:17:58 subsidiary?

cae6055e-81d1-47c5-9a5d-ee53ad32ffc2

11:17:59 A So far as I know, we have invested a lot, the majority of the shares.

11:18:07 Q Rexon owns a majority of the shares of PTS?

11:18:14 A That's what I know about.

11:18:20 Q Do you know when Rexon first invested in PTS?

11:18:31 A I don't know.

11:18:36 Q Was it more than five years ago?

11:18:41 A It should be.

11:18:42 Q More than ten years ago?

11:18:46 A I don't know. I don't remember.

11:18:53 Q What functions does Rexon USA provide with Rexon's -- with Rexon, the parent company?

11:19:19 A I really not sure about it.

11:19:23 Q Do you deal with anyone at Rexon USA?

11:19:31 A Jim Lancaster.

11:19:36 Q Does he also work for PTS?

11:19:52 A I'm not sure about the organization. Usually there are many people interact with each other.

11:20:00 Q So there are people who work for both companies?

11:20:12 A I did not answer this one question or I'm not so sure.

cae6055e-81d1-47c5-9a5d-ee53ad32ffc2

11:20:20 Q What do you speak to Jim Lancaster about?

11:20:46 THE INTERPRETER: Sorry. I have to clarify.

11:20:59 A He usually provide the feedback from the -- from a interaction with a client.

11:21:07 He usually provide the feedback from after the interaction with clients.

11:21:14 BY MR. GAURI:

11:21:15 Q Which clients?

11:21:21 A Such as Sears. Ace. CTC of Canada and Sears Canada. I only know these.

11:21:45 Q Does he interact with Lowe's also?

11:21:57 A So far as I know, yes.

11:22:03 Q Which products does Jim Lancaster discuss with his clients?

11:22:14 A Bench and pneumatic.

11:22:21 Q That includes all table saws and miter saws manufactured by Rexon?

11:22:30 A Yes.

11:22:33 Q What kind of feedback does he discuss with his clients?

11:22:44 A He will give us the meeting notes.

11:22:50 Q Notes from which meetings?

11:23:02 A Something about a sales activities.

11:23:08 Q Who attends those meetings?

11:23:13 Who attends those meetings?

11:23:16 A Usually buyers.

11:23:18 Q Do you know the names of anyone who

11:23:20 attends those meetings with Jim Lancaster?

11:23:31 A Which client are you refer to?

11:23:36 Q Any of the ones you mentioned.

11:23:52 A Russ Baker. Steve Noble.

11:24:14 Before he was for Sears, before it was

11:24:17 Barbara. Now it's Russ Baker. And -- Steve Noble

11:24:31 is the buyer from CTC.

11:24:39 Q What is Barbara's last name?

11:24:49 A Probably R-a-d-a, but I'm not sure.

11:24:53 Q Did she leave Sears?

11:24:58 A So far as I know, no.

11:25:01 Q When did Russ Baker take over?

11:25:12 A Should be more than a year, but I'm not

11:25:16 sure about a date.

11:25:17 Q What about Sears Canada, who does Jim meet

11:25:22 with from Sears Canada?

11:25:42 A The new one I know is Mike. Maybe Mike

11:25:46 Hocken.

11:25:47 But I don't know how to spell his last

11:25:51 name.

11:25:53 Q Who did he replace?

11:25:54 A I don't remember.

11:25:56 Q What about Lowes?

11:26:06 A Lowes, Larry Covin, C-o-v-i-n. I don't
11:26:16 know whether I spelled it right.

11:26:20 Q What about Ace?

11:26:25 A I don't quite deal with Ace.

11:26:30 Q So you deal with all of these persons in
11:26:33 addition to Jim?

11:26:45 A When you say these people you mean these
11:26:49 clients?

11:26:52 Q Correct.

11:26:59 A Very few chances. Only when they go to
11:27:02 Taiwan.

11:27:03 Q So you meet with these clients personally
11:27:06 when they visit Taiwan?

11:27:15 A They will go to our company and I'll be
11:27:20 there.

11:27:21 Q How often does that happen?

11:27:28 A Once a year sometimes. But sometimes not
11:27:31 at all.

11:27:33 Q But these people you all mentioned, they
11:27:36 all work for the clients.

11:27:39 Is that correct?

11:27:39 Russ Baker, Steve, Mike and Larry?

11:27:54 A Yes. They are all buyers.

11:27:57 Q Do you deal with anyone else at Rexon USA

other than Jim Lancaster?

A Because I'm not sure about the organizations of PTS and Roxon USA, so I don't know.

Q Do you deal with anyone else at PTS who we didn't discuss earlier like Bob, Joe, Nina, Jenny, Judy and Dan?

A I already answered your question because we are colleagues with each other that we frequently have communications.

Q So no one other than the people I mentioned?

A I -- that's what I remember.

Q Do you know Shi Ying Lin?

A It's that you said it wrong or I have never heard of this person.

Q Do you deal with anyone who has the title of president of Rexon USA?

A Yes, because we are colleagues.

Q Who is that?

A Now it's Jim.

Q Jim is president of Rexon USA?

A Yes, now.

Q Who preceded him?

A No one.

Q Who carried out his duties before he took

11:30:24 over?

11:30:34 A I really don't know about the organization

11:30:39 outside the country.

11:30:42 Q How long has Jim been at Rexon USA?

11:30:54 A I don't remember. It should be more than

11:30:57 four years.

11:31:00 MR. GAURI: Okay. We are running out

11:31:01 of videotape is my understanding, so why

11:31:03 don't we take a break.

11:31:05 THE VIDEOGRAPHER: Going off the

11:31:06 record at 11:30 a.m.

11:31:12 (THEREUPON, THERE WAS A RECESS

11:31:12 TAKEN.)

11:49:45 THE VIDEOGRAPHER: Back on the record

11:49:46 at 11:49 a.m.

11:49:49 BY MR. GAURI:

11:49:49 Q Mr. Ku, earlier we were talking about your

11:49:52 interactions with Jim Lancaster at Rexon USA. You

11:49:57 mentioned that he provides feedback from clients.

11:50:01 Does Rexon USA provide any other service

11:50:05 or function to Rexon Industrial?

11:50:48 A I'm not sure about this in this respect.

11:50:53 Q Does Rexon USA ship any products to

11:50:57 customers in the U.S.?

11:51:09 A I don't know.

11:51:11 Q And just so I -- just to confirm, the only
11:51:15 person you've ever dealt with at Rexon USA is Jim
11:51:21 Lancaster?
11:51:38 A I did not say because PTS and Rexon USA,
11:51:44 they have interaction.
11:51:45 I don't know about their organization so I
11:51:49 better not say it.
11:51:51 Q Does Rexon wholly own -- I'm sorry. Let
11:51:56 me rephrase that.
11:51:57 Does Rexon entirely own Rexon USA?
11:52:05 A I don't know.
11:52:07 Q Do you know if anyone else owns a part of
11:52:11 Rexon USA?
11:52:17 A I don't know.
11:52:22 Q Would you consider Rexon USA to be a
11:52:26 subsidiary of Rexon?
11:52:35 A I think it is because it is Rexon USA.
11:52:39 Q Where is Rexon USA located?
11:52:45 A In Connecticut.
11:52:47 Q Do you know where in Connecticut?
11:52:54 A Springfield.
11:52:57 Q Does Rexon USA share in the same location
11:53:01 as PTS?
11:53:09 A Part. Just part.
11:53:11 Q What do you mean by part?

11:53:22 A There are other --

11:53:25 (THEREUPON, THE COURT REPORTER
11:53:25 REQUESTS CLARIFICATION.)

11:53:26 A There are other colleagues in Chicago.

11:53:35 MR. GROGAN: Other what?

11:53:36 THE INTERPRETER: Colleagues.

11:53:36 MR. GROGAN: Colleagues. Okay.

11:53:38 THE INTERPRETER: Are close.

11:53:41 BY MR. GAURI:

11:53:42 Q Who are those colleagues?

11:53:51 A Right now I can't remember their names.

11:53:53 Q They work for Rexon USA?

11:54:01 A Yes.

11:54:01 Q How many of them are there?

11:54:06 A So far as I know, two.

11:54:09 Q What do they do for Rexon USA?

11:54:19 A Account managers.

11:54:21 Q They are both account managers?

11:54:25 A So far as I know, yes.

11:54:27 Q For which accounts?

11:54:33 A Sears and Lowes.

11:54:40 Q And which product lines do they deal with?

11:54:50 A Lowes, Tradesmen in Lowes, Craftsman in
11:54:56 Sears.

11:54:57 Q So do either of them deal with miter saws

11:55:01 with rotating handles?

11:55:11 A So far as I know only Sears.

11:55:15 Q And do they deal with miter saws with

11:55:19 laser guides?

11:55:26 A Yes.

11:55:29 Q Does Tradesmen make any miter saws with

11:55:33 rotating handles?

11:55:39 MR. GROGAN: Objection.

11:55:44 A No. So far as I know, no.

11:55:47 BY MR. GAURI:

11:55:47 Q Are there any Tradesmen miter saws with

11:55:51 laser guides?

11:56:00 A Yes.

11:56:00 Q Which ones?

A I don't remember the model number.

11:56:09 Q Is it only one?

11:56:12 A More than that.

11:56:14 Q Do you know how many?

11:56:21 A Probably two. Approximately two.

11:56:28 Q And both the account managers in Chicago

11:56:31 deal with table saws?

11:56:40 A I want to clarify. One in Chicago, one in

11:56:44 other location.

11:56:45 Q What is the other location?

11:56:51 A North Carolina.

11:56:52 Q Where in North Carolina?

11:57:02 A Mooresville.

11:57:08 I don't know how to spell the whole name, M-o-r-e-s-v-i-l-l.

11:57:18 Q Mooresville?

11:57:19 THE WITNESS: Yup.

11:57:20 BY MR. GAURI:

11:57:20 Q Is the Lowes manager in Mooresville?

11:57:24 THE WITNESS: Yes.

11:57:24 BY MR. GAURI:

11:57:24 Q And the Sears manager is in Chicago?

11:57:26 A Yes.

11:57:29 Q But you don't remember either of their names?

11:57:38 A Dave in Lowes.

11:57:40 Q What is his last name?

11:57:45 A I don't remember how to spell it.

11:57:51 Q What's his full Chinese name?

11:57:57 A He's American.

11:57:58 Q American. Okay.

11:58:03 What about the Craftsman account manager. What's his name?

11:58:09 A Let me think about it. Right now I cannot remember.

11:58:17 Q Are there any account managers at Rexon in

11:58:21 Taiwan who are responsible for Sears or Lowes?

11:58:32 A Recently we have one.

11:58:34 Q Who is that?

11:58:36 A Jeff Chen.

11:58:38 Q Who is he the account manager for?

11:58:45 A Sears. Taiwan Sears.

11:58:52 We separated American account and Taiwan

11:58:57 account. And he's responsible for the Taiwan

11:59:00 account.

11:59:01 Q So Jeff Chen is only responsible for Sears

11:59:05 locations in Taiwan?

11:59:09 A Yes.

11:59:10 Q So the only account manager who is

11:59:12 responsible for Craftsman products for Rexon is

11:59:17 located in Chicago?

11:59:25 MR. GROGAN: Rexon or Rexon USA?

11:59:28 We have been kind of going back and

11:59:30 forth here.

11:59:32 MR. GAURI: Just Rexon. Let me

11:59:33 rephrase.

11:59:34 BY MR. GAURI:

11:59:35 Q Is the only account manager for Craftsman

11:59:37 products that you are aware of in Chicago?

11:59:46 A Yes.

12:00:07 Q Do you know what those account managers do

cae6055e-81d1-47c5-9a5d-ee53ad32ffc2

12:00:10 for Rexon USA?

12:00:15 A I'm not sure about the content.

12:00:18 Q Do you deal with them personally?

12:00:25 A Just colleagues.

12:00:28 Q Which of your colleaguos deal with these

12:00:30 account managers we are talking about?

12:00:46 A Jeff Chen deal with the one in Chicago.

12:00:53 Q Jeff Chen works at your facility in

12:00:57 Taiwan?

12:01:01 A Yes.

12:01:06 Q So Jeff -- is there anyone other than Jeff

12:01:09 Chen who would know the name of the account manager

12:01:12 in Chicago?

12:01:21 A I remember now. His namo is Ray, R-a-y.

12:01:27 Q Do you remember his last namo?

12:01:29 A I don't know how to spell it.

12:01:32 Q Can you say it?

12:01:37 A I don't want to guess.

12:01:39 Q Is it Holbrook?

12:01:45 A Yes.

12:01:46 Q Do you speak with Ray Holbrook personally?

12:01:51 A Yes.

12:01:52 Q How often?

12:01:57 A Almost every week.

12:02:00 Q Once a week?

cae6055e-81d1-47c5-9a5d-ee53ad32ffc2

A It varies.

Q Do you speak in English?

A Simple English.

Q What do you discuss with him?

A He asked me about the progress of the samples when the samples will be ready.

Q Which samples?

A New products, those that we want to sell to clients.

Q Do you discuss already existing products with Mr. Holbrook?

A Yes.

Q Which ones?

A Something such as what I mentioned, table saw.

Q And miter saw?

A No.

Q You've never discussed the miter saw with Ray Holbrook?

A Before we have times talked about it.

Q But the miter saw would still be -- miter saws would still be one of the products Ray Holbrook is in charge of?

A Yes.

Q Mr. Ku, how many times have you visited

13:56:23 it's listed North America support, who is that?

13:56:37 A Assistance for Grace in Taiwan.

13:56:41 Q Does she have -- does she work with anyone

13:56:44 in the United States?

13:56:57 A Mostly she communicates with Jenny.

13:56:59 Q At PTS?

13:57:01 A Yes.

13:57:06 Q And then on the far right it states

13:57:09 service parts.

13:57:14 A That's serve -- service, after sales

13:57:21 service and parts shipping.

13:57:23 Q And who handles that?

13:57:38 A Someone under Grace. I forgot the name.

13:57:40 Q Does Rexon USA and PTS, are they also

13:57:45 involved with service and parts?

13:57:52 A Yes.

13:57:54 Q And then to the left of service parts is

13:57:57 accounting?

13:58:09 A They --

13:58:10 (THEREUPON, THE COURT REPORTER

13:58:10 REQUESTS CLARIFICATION.)

13:58:11 A They collect from clients. Collect money

13:58:13 from clients.

13:58:14 BY MR. GAURI:

13:58:14 Q Who is in that accounting department?