IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| REXON INDUSTRIAL CORPORATION, LTD., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PORTER-CABLE CORPORATION, )<br>DELTA INTERNATIONAL MACHINERY )<br>CORP. and PENTAIR, INC., )<br>)<br>Defendants. )<br>_____)<br>)<br>BLACK & DECKER INC., )<br>BLACK & DECKER (U.S.) INC. and )<br>PORTER-CABLE CORPORATION, )<br>)<br>Plaintiffs-in-Counterclaim, )<br>)<br>v. )<br>)<br>REXON INDUSTRIAL CORPORATION, LTD., )<br>)<br>Defendant-in-Counterclaim. ) | Civil Action No. 04-CV-30180-MAP |

**BLACK & DECKER'S FIRST SET OF REQUESTS FOR
PRODUCTION TO PLAINTIFF REXON INDUSTRIAL CORPORATION**

Black & Decker (U.S.) Inc., Black & Decker Inc., Porter-Cable Corporation and Delta International Machinery Corp. ("Black & Decker"), through and by counsel, requests that Rexon Industrial Corporation Ltd. ("Rexon") produce the documents and things described in the following requests for production within 30 days of service, pursuant to Fed.R.Civ.P. 34.

Black & Decker will examine the documents at the offices of its counsel, or where the documents are maintained by Rexon, or at any other mutually agreeable location where suitable

examination and photocopying facilities exist or can be arranged. By accepting photocopies, Black & Decker is not waiving its right to examine originals where necessary.

Where Rexon withholds documents for reasons of attorney-client privilege, work-product immunity or the like, Black & Decker requests that it be served with a list of such documents prepared in accordance with applicable case law, including at least the names and titles or functions of the authors; any recipients; the date; the basis for withholding; and a description of the document and its subject matter sufficient to allow Black & Decker to contest the claim. Black & Decker will accept confidential documents under a suitable protective order.

In cases where Rexon believes there is no responsive document, or where it is maintained for a different period or fiscal year, Black & Decker asks that Rexon produce the best available documents from which the information sought by the request may be derived.

These requests for production shall be deemed continuing so as to require the requested information as of the date of service of Rexon's answers thereto and also as to require prompt supplementation whenever the conditions of Federal Rule of Civil Procedure 26(e) are met.

## DEFINITIONS

1. The terms "Rexon," "you," and "your" shall mean the Rexon Industrial Corporation, Ltd. and any other company name under which Plaintiff is or was doing business, as well as their predecessors, parents, subsidiaries, divisions, directors, officers, employees, agents and attorneys, and each person acting or purporting to act on their behalf or under their control.

2. The phrase "'708 patent" refers to United States Letters Patent No. 5,285,708 issued to Bosten et al., entitled "Miter Saw Alignment System;" and the phrase "'495 patent" refers to

2

United States Letters Patent No. 5,375,495 issued to Bosten et al., entitled "Optical Alignment System for Circular Power Saws" (collectively the "Bosten Patents").

3. The phrase "'203 patent" refers to United States Letters Patent No. 6,688,203, entitled "Circular Sawing Machine Having Indication Device."

4. The phrase "'619 patent" refers to United States Letters Patent No. 5,819,619 entitled "Dust Collection System for Compound Miter Saw;" the phrase "'040 patent" refers to United States Letters Patent No. 6,431,040 entitled "Dust Collection System for Compound Miter Saw;" and the phrase "'570 patent" refers to United States Letters Patent No. 6,427,570 entitled "Dust Collection System for Compound Miter Saw (collectively the "Dust Collection Patents").

5. "Document(s)," as used herein, refers to the broadest definition of document under the Federal Rules, e.g., anything which would be a "writing" or "recording" as defined in Rule 1001(1) of the Federal Rules of Evidence or a "document" as defined in Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation every original (and every copy of any original or copy which differs in any way from any original because of notations thereon or attachments thereto or otherwise) of every writing or recording of every kind of description, whether handwritten, typed, drawn, printed or recorded by any physical, mechanical, electronic or electrical means, including electronic data compilations.

5. "Thing(s)" means any tangible item, and shall be construed as broadly as possible under the Federal Rules of Civil Procedure.

6. "Electronic data compilations" means information stored in computer memory, magnetic tapes, discs or any other computer data storage area from which such information can be read and be translated to usable form with the use of detection devices.

7. To "identify" or "locate" documents and things means to provide a brief description of each document or thing sufficient to support a request for production, including at least the type of document or thing, date, identification of the author, as well as identification of each person who presently has custody of the document or thing and of any copy thereof.

8. The terms "person" or "persons" refers to both natural persons and to corporate, governmental or other business entities and the acts of a person are defined to include the acts of directors, officers, owners, members, employees, agents or attorneys acting on the person's behalf.

9. To "identify" a person means to state the person's name and business address and telephone number and, additionally, in the case of a natural person, his home address, employer, present occupation, job title and telephone number.

10. The term "prior art" includes by way of example and without limitation, the subject matter described in 35 U.S.C. § 103 and in each subdivision of 35 U.S.C. § 102.

11. The terms "and," "or" as well as "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

12. The term "relevant" means documents and other information which are relevant in the sense of Fed.R.Civ.P. 26 or Fed.R.Evid. 401-02; or which Plaintiff intends to use to support his allegations or defenses; or which tend to prove or disprove any allegations or defenses of Defendants.

13. The terms "relate to," "relating to" or "related to" mean relevant to, referring to, alluding to, responding to, concerning, connected with, commenting on, in respect of, about, regarding, discussing, evidencing, showing, describing, reflecting, analyzing and/or constituting.

4

14. The terms "infringe," "infringes," or "infringed" refers to any form of infringement actionable under United States law, including without limitation, direct infringement, contributory infringement and inducement to infringe.

15. The term "Craftsman® Accused Products" means the Craftsman® miter saws with laser guide capability, including but not limited to Model Nos. 21205, 21206, 21214, 21215, 21235, 21254 and 21274 (and models of similar construction) that have been accused of infringing the '708 and '495 patents in this suit and components thereof.

1. All documents and things relating to the '203 patent.

2. All documents and things relating to the subject matter shown, described, or claimed in the '203 patent.

3. All documents and things relating to the conception, reduction to practice, design, development, manufacture, use, marketing and sale of the embodiments or subject matter shown, described, or claimed in the '203 patent.

4. All documents and things supporting Rexon's allegations that Black & Decker, Delta International Machinery and/or Porter-Cable Corporation have infringed the '203 patent.

5. Specimens of each product embodying the subject matter shown, described, or claimed in the '203 patent including, without limitation, products on which the '203 patent was or is marked, products licensed under the '203 patent and products that Rexon contended or contends are covered by any claim of the '203 patent.

6. Documents sufficient to identify the names, titles, and current employers of all persons having responsibility for the conception, design, development, manufacture, use, marketing and sale of the subject matter shown, described, or claimed in the '203 patent.

7. All documents and things relating to any and/or all advertising, business plans, marketing plans or efforts, promotional programs or strategies on the part of Rexon, or on its behalf, concerning any proposed or actual products shown, described, or claimed in the '203 patent.

8. All documents and things relating to the date on which any product embodying the subject matter shown, described or claimed in the '203 patent was first made, used, offered for sale, sold and/or imported.

9. All documents and things that relate to disclosures, offers to sell and sale of the subject matter shown, described or claimed in the '203 patent prior to November 27, 2001.

10. All documents and things that relate to the preparation, filing, prosecution, or maintenance of the '203 patent.

11. All patents and patent applications, whether pending or abandoned, United States or foreign, issued to, assigned to or filed by or on behalf of Rexon that relate to or claim priority to the '203 patent, including but not limited to, all predecessor and successor patents and applications.

12. All documents and things that relate to the preparation, filing, prosecution, or maintenance of all patent applications, whether pending or abandoned, United States or foreign, issued to, assigned to or filed by or on behalf of Rexon that relate to or claim priority to the '203 patent, including but not limited to all predecessor and successor patents and applications.

13. All documents and things that in any way tend to refute or support Rexon's contention that the subject matter shown, described, or claimed in the '203 patent is patentable.

14. All documents and things that in any way tend to refute or support Rexon's contention that claims of the '203 patent is valid and enforceable.

6

15. All documents and things relating to the meaning and/or scope of the claims of the '203 patent.

16. All prior art to the subject matter shown, described, or claimed in the '203 patent.

17. All documents and things relating to any and/or all searches or investigations ever conducted by or for Rexon to locate prior art relating to the patentability of the subject matter shown, described, or claimed in the '203 patent and/or the validity and enforceability of the claims of the '203 patent.

18. All documents and things that relate to any and/or all studies, analyses, or opinions concerning the patentability of the subject matter shown, described, or claimed in the '203 patent, and/or to the validity and enforceability of the claims of the '203 patent.

19. All patents or documents, including printed publications, that show the state of the art relative to the subject matter shown, described, or claimed in the '203 patent, and which have filing date or publication date in this or a foreign country prior to November 27, 2000.

20. All documents and things relating to assignments, transfers, conveyances, licenses, offers to license, or granting of any interest in or of rights to, the '203 patent.

21. All documents and things relating to any alleged long-felt need for the subject matter shown, described, or claimed in the '203 patent.

22. All documents and things relating to any and/or all attempts by persons other than Rexon to solve any problems that were allegedly solved by the subject matter shown, described, or claimed in the '203 patent.

23. All documents and things relating to the alleged commercial success of the subject matter shown, described, or claimed in the '203 patent.

24. All documents and things relating to any nexus between alleged commercial success and the patented features of the subject matter claimed in the '203 patent.

25. All documents which evidence the ordinary level of skill in the art for the subject matter shown, described, or claimed in the '203 patent.

26. All documents and things relating to Porter-Cable Corporation, Delta International Machinery, Black & Decker (U.S.) Inc. and Black & Decker Inc. and/or any products made, used, offered for sale, sold or imported by or on behalf of any of these companies including, without limitation, the products accused of infringing the '203 patent.

27. All documents and things relating to Rexon's first knowledge or awareness of products (including, without limitation the accused products) that allegedly infringe the '203 patent.

28. All documents and things relating to any products (including, without limitation, the accused products) that Rexon contends have infringed or currently infringe the '203 patent.

29. All documents and things relating to any miter saws with laser guide capability made, used, offered for sale, sold and/or imported by Rexon or any of Rexon's competitors.

30. All documents and things relating to any and/or all analyses, evaluations, tests, studies or investigations of product that Rexon believed or believes is covered by any claim of the '203 patent.

31. All documents and things relating to, or that in any way tend to support or refute Rexon's allegation that: "Upon information and belief, Defendants have infringed and are now directly infringing, inducing infringement by others, and/or contributorily infringing one or more claims of the '203 patent within this District and elsewhere within the United States by making,

8

using, selling, and/or offering to sell products falling within the scope of such claims, all without authority or license from Plaintiff."

32. All court filings and pleadings from all previous lawsuits relating to the '203 patent.

33. All documents and things that relate to or otherwise evidence the damages that Rexon contends should be awarded as a result of alleged infringement of the claims of the '203 patent.

34. Documents and things sufficient to show total monthly and annual sales in units and dollars, unit prices, and unit costs of all products, systems or components allegedly made pursuant to the subject matter shown, described, or claimed in the '203 patent.

35. Documents and things sufficient to show the monthly and annual net and gross profits for products, systems, or components allegedly made pursuant to the subject matter shown, described, or claimed in the '203 patent.

36. Documents and things sufficient to identify all of Rexon's past and existing purchasers, distributors, or licensees of all products, systems, or components allegedly made pursuant to the subject matter shown, described, or claimed in the '203 patent.

37. All documents and things relating to sales or profit projections, forecasts, or estimates for all products, systems, or components allegedly made pursuant to the subject matter shown, described, or claimed in the '203 patent.

38. All federal and state income tax returns of Rexon from 2000 to the present.

39. All documents and things relating to returns of, complaints, dissatisfaction, negative comments, unfavorable opinions or suggestions for improvement of products shown, described, or claimed in the '203 patent.

40. All documents and things relating to Rexon's marking of or efforts to mark the '203 patent on products shown, described, or claimed in the '203 patent.

41. All documents and things communicated to and from any expert retained by Rexon for this litigation, including but not limited to, all communications, draft reports, and declarations or affidavits.

42. All documents and things that constitute, relate, or refer to Rexon's policies, practices, or procedures currently in place or previously in effect with respect to the retention or destruction of documents.

43. Documents and things sufficient to show your organizational structure, including but not limited to all organization charts.

44. All documents and things identified by Rexon in its answers to Porter-Cable Corporation's and Delta International Machinery's Interrogatories, or reviewed, referred to, or relied upon by Rexon in preparing its responses to said interrogatories.

45. All documents and things reviewed, referred to, or relied upon by Rexon in support of the allegations in its Complaint.

46. All documents and things identified by subject matter in Rexon's Rule 26(a)(1), Fed.R.Civ.P. disclosures.

47. Documents sufficient to show all the trade names, product names, product numbers and/or other designations used in connection with the Craftsman® Accused Products.

48. All documents pertaining to the infringement and/or validity of the claims of the Bosten Patents.

49. All documents that support or refute Rexon's contentions of invalidity and/or noninfringement of any of the claims of the Bosten Patents.

50. All documents pertaining to any guidance, correspondence, specifications, communications, comments and/or instructions given to or received from any other party regarding the design, development, manufacture, sale, advertising and/or profitability of the Craftsman® Accused Products.

51. Documents and things Rexon contends are prior art to the Bosten Patents, including without limitation all prior art upon which Rexon may rely to show obviousness or which is relevant to the nonobviousness of the claims of the Bosten Patents; documents sufficient to show the structure, function or operation of any product in public use or on sale in the United States which Rexon asserts to be prior art to the claims of the Bosten Patents.

52. All documents pertaining to the interpretation, scope and meaning of the claims of the Bosten Patents.

53. All documents pertaining to any validity or patentability prior art search or investigation reports relied upon, reviewed, generated, performed, commissioned, ordered, requested, received, contracted or purchased by or for Rexon in reference to the Bosten Patents.

54. Any studies, analyses, consideration, discussion or communication pertaining to the Bosten Patents, including without limitation any communications between Rexon and its attorneys pertaining to these patents, and all documents pertaining to such studies, analyses, consideration, discussion or communication. To the extent Rexon intends to assert good faith reliance on advice of counsel as a defense, Rexon specifically requests the production of any documents containing or pertaining to legal opinions regarding the Bosten Patents and Rexon's right to manufacture, use

11

and/or sell the Craftsman® Accused Products, including any legal opinions of invalidity and/or noninfringement of the Bosten Patents.

55. All documents that support any defense Rexon may assert to rebut the charge of willful infringement.

56. All documents pertaining to the features, advantages and/or benefits of the inventions described and claimed in the Bosten Patents.

57. All documents pertaining to the demand for a miter saw with laser guide capability.

58. All documents pertaining to problems encountered before January 2000 in the development or production of a miter saw with laser guide capability.

59. Documents sufficient to show the types, versions and models of the Craftsman® Accused Products since their introduction, including their construction and manufacture.

60. All documents pertaining to the structure, function and operating characteristics of the Craftsman® Accused Products, and methods of manufacture of the Craftsman® Accused Products, including without limitation photographs, films, design schematics, part lists, warranties, instruction manuals and customer service/assistance manuals and guidelines.

61. All documents pertaining to sales and promotional materials for each Craftsman® Accused Product (and components thereof), including without limitation television and print media advertising; brochures and trade show promotional material; press releases; catalogues, price lists, sell sheets, product descriptions, sales literature and the like.

62. All documents pertaining to the design and development sequence and chronology for each Craftsman® Accused Product (or component thereof), including without limitation

engineering reports, strategic plans, business plans, business strategy reports, focus groups, market research, boards of directors minutes, correspondence or development time lines.

63. All documents pertaining to Rexon's expenses for researching and developing the Craftsman® Accused Products.

64. Documents sufficient to identify all persons involved with or responsible for the conception, design, development, approval and manufacturing of the Craftsman® Accused Products.

65. All documents and things consulted, considered, reviewed or relied upon by Rexon during the development of the Craftsman® Accused Products.

66. All documents pertaining to any tests performed on any Craftsman® Accused Product, including but not limited to documents sufficient to identify the protocol used for any test and persons having knowledge of and/or participating in such tests.

67. All documents pertaining to the method of manufacture of each of the Craftsman® Accused Products.

68. All documents pertaining to Rexon's knowledge of the Bosten Patents, including without limitation the circumstances under which Rexon first learned of the existence of the Bosten Patents or the applications that ultimately issued as the Bosten Patents.

69. All documents pertaining to the date Rexon contends it first received notice of infringement of the Bosten Patents.

70. All documents pertaining to the unit and dollar volume of the Craftsman® Accused Products (or components thereof), categorized by year and by product type and name.

71. Documents sufficient to show prices and pricing structure for all of the Craftsman® Accused Products.

72. All documents pertaining to the revenues and expenses, respectively, attributed to the manufacture, use, sale, offer for sale, licensing and/or importation of the Craftsman® Accused Products (and components thereof), categorized by year and by product type and name.

73. Documents sufficient to show the gross and net profits (including incremental gross margins) attributed to the manufacture, use, sale, licensing and/or importation of Craftsman® Accused Products (or components thereof), categorized by year and by product type and name.

74. Documents sufficient to show and pertaining to the relative level of Rexon's gross profits for all of its products sold during the past three years; also all documents sufficient to permit Rexon's gross profits for all of its products to be compared to the profitability of the Craftsman® Accused Products.

75. Annual financial reports of Rexon since 2000.

76. All documents pertaining to the market for miter saws with laser guide capability in that market since 2000, including but not limited to market share data and consumer surveys.

77. All documents which Rexon contends are relevant to the determination of a reasonable royalty in a hypothetical negotiation between Black & Decker and Rexon for the licensing of the Bosten Patents, including what would constitute a reasonable royalty rate and the royalty base.

78. All documents pertaining to any license, indemnification or other agreement between Rexon and any other party that relate in any way to the Craftsman® Accused Products.

79. All documents and things communicated to and from any expert retained by Rexon for this litigation, including but not limited to, all communications, draft reports, and declarations or affidavits.

14

80. All documents and things identified by Rexon in its answers to Black & Decker's interrogatories, or reviewed, referred to, or relied upon by Rexon in preparing its responses to said interrogatories.

81. All documents and things reviewed, referred to, or relied upon by Rexon in support of the allegations in its Answer to Black & Decker's Counterclaims.

82. Documents sufficient to show all the trade names, product names, product numbers and/or other designations used in connection with the Craftsman® Accused Products.

83. All documents pertaining to the infringement and/or validity of the claims of the Dust Collection Patents.

84. All documents that support or refute Rexon's contentions of invalidity and/or noninfringement of any of the claims of the Dust Collection Patents.

85. All documents pertaining to any guidance, correspondence, specifications, communications, comments and/or instructions given to or received from any other party regarding the design, development, manufacture, sale, advertising and/or profitability of the Craftsman® Accused Products.

86. Documents and things Rexon contends are prior art to the Dust Collection Patents, including without limitation all prior art upon which Rexon may rely to show obviousness or which is relevant to the nonobviousness of the claims of the Dust Collection Patents; documents sufficient to show the structure, function or operation of any product in public use or on sale in the United States which Rexon asserts to be prior art to the claims of the Dust Collection Patents.

87. All documents pertaining to the interpretation, scope and meaning of the claims of the Dust Collection Patents.

15

88. All documents pertaining to any validity or patentability prior art search or investigation reports relied upon, reviewed, generated, performed, commissioned, ordered, requested, received, contracted or purchased by or for Rexon in reference to the Dust Collection Patents.

89. Any studies, analyses, consideration, discussion or communication pertaining to the Dust Collection Patents, including without limitation any communications between Rexon and its attorneys pertaining to these patents, and all documents pertaining to such studies, analyses, consideration, discussion or communication. To the extent Rexon intends to assert good faith reliance on advice of counsel as a defense, Rexon specifically requests the production of any documents containing or pertaining to legal opinions regarding the Dust Collection Patents and Rexon's right to manufacture, use and/or sell the Craftsman® Accused Products, including any legal opinions of invalidity and/or noninfringement of the Dust Collection Patents.

90. All documents that support any defense Rexon may assert to rebut the charge of willful infringement with respect to the Dust Collection Patents.

91. All documents pertaining to the features, advantages and/or benefits of the inventions described and claimed in the Dust Collection Patents.

92. All documents pertaining to the demand for a miter saw with a dust collection system.

93. All documents pertaining to problems encountered before January 2000 in the development or production of a miter saw with a dust collection system.

94. All documents pertaining to Rexon's knowledge of the Dust Collection Patents, including without limitation the circumstances under which Rexon first learned of the existence of the Dust Collection Patents or the applications that ultimately issued as the Dust Collection Patents.

16

95. All documents pertaining to the date Rexon contends it first received notice of infringement of the Dust Collection Patents.

96. All documents pertaining to the market for miter saws with dust collection systems in that market since 2000, including but not limited to market share data and consumer surveys.

97. All documents which Rexon contends are relevant to the determination of a reasonable royalty in a hypothetical negotiation between Black & Decker and Rexon for the licensing of the Dust Collection Patents, including what would constitute a reasonable royalty rate and the royalty base.

Respectfully submitted,

_____
Raymond P. Niro
Raymond P. Niro, Jr.
Christopher J. Lee
Richard B. Megley, Jr.
Dina M. Hayes
NIRO, SCAVONE, HALLER & NIRO
181 West Madison, Suite 4600
Chicago, Illinois 60602-4515
Phone: (312) 236-0733
Facsimile: (312) 236-3137
Email: miro@nshn.com; mirojr@nshn.com;
lee@nshn.com; megleyjr@nshn.com; hayes@nshn.com

C. Jeffrey Kinder (BBO# 563890)
FIERST, PUCCI & KINDER LLP
64 Gothic Street, Suite 4
Northampton, Massachusetts 01060
Phone: (413) 584-8067
Facsimile: (413) 585-0787
Email: kinder@fierstpucci.com

**Attorneys for Black & Decker Inc., Black & Decker (U.S.) Inc., Porter-Cable Corporation and Delta International Machinery Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2005, I electronically filed the foregoing **BLACK & DECKER'S FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFF REXON INDUSTRIAL CORPORATION** by Facsimile and First Class Mail to:

J. Kevin Grogan (BBO # 635089)
   Email: grogan@ip-lawyers.com
Arthur F. Dionne (BBO # 125760)
   Email: dionne@ip-lawyers.com
Donald J. MacDonald (BBO # 644582)
Kevin H. Vanderleeden (BBO # 648361)
MCCORMICK, PAULDING & HUBER LLP
1350 Main Street, 5th Floor
Springfield, Massachusetts 01103
Phone: (413) 736-5401
Facsimile: (413) 733-4543
   **Attorneys for Rexon Industrial Corporation, Ltd.**

_____
Attorney for Black & Decker Inc., Black & Decker (U.S.) Inc., Porter-Cable Corporation and Delta International Machinery Corporation

18